UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL REDDINGER, III,** | : | **CIVIL NO. 1:CV-04-1030** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN PALAKOVICH, ET AL.,** | : | |
| | : | |
| **Respondents** | : | |

## M E M O R A N D U M

### I.   Background

Carl Reddinger, III, an inmate presently confined at the Smithfield State

Correctional Institution, Huntingdon, Pennsylvania ("SCI-Smithfield"), initiated this

*pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Named as

Respondents are SCI-Smithfield Superintendent John Palakovich and the Attorney

General for the Commonwealth of  Pennsylvania.  Service of the petition was

previously ordered.  For the reasons that follow, the petition will be denied.

Following a jury trial in the Court of Common Pleas for Lebanon County ("trial

court"), Pennsylvania Reddinger was convicted of criminal homicide in the third

degree, criminal conspiracy to commit criminal homicide in the third degree,

aggravated assault and criminal conspiracy to commit aggravated assault.[1]   On

December 2, 1998, he was sentenced to a twenty (20) to forty (40) year term of

incarceration. After sentencing, Reddinger's trial counsel was granted leave to

withdraw due to health reasons.  The Lebanon County Public Defender's Office was

appointed to serve as Reddinger's appellate counsel.  Post-sentence motions were

denied on June 10, 1999.  By decision dated June 9, 2000, the Pennsylvania Superior

Court affirmed Reddinger's conviction.

Reddinger next filed a *pro se* petition under Pennsylvania's Post Conviction

Collateral Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 *et seq.*[2]  A hearing on the

PCRA petition was conducted by the trial court on September 18, 2001.  By Order

dated April 22, 2002, the trial court denied Reddinger's request for PCRA relief.

Reddinger appealed the denial to the Pennsylvania Superior Court.  On June 3, 2003,

the Superior Court affirmed the trial court's denial of relief.  *See Commonwealth v.*

*Reddinger*, 830 A.2d 1052 (Pa. Super. 2003) (Table).  A petition for allowance of

---

[1] The charges underlying Reddinger's conviction stem from the death of David Shutter from a severe beating inflicted by Reddinger and two co-defendants, Henry Barto, Jr. and Thomas Staff during the early morning hours of January 1, 1998.

[2] While Reddinger's direct appeal was pending, the trial court denied Reddinger's initial *pro se* Motion for Post Conviction Collateral Relief as premature.

appeal was subsequently denied by the Pennsylvania Supreme Court on March 30,

2004.  *See Commonwealth v. Reddinger*, 847 A.2d 1283 (Pa. 2004) (Table).

Reddinger claims that he is entitled to federal habeas corpus relief on the

grounds that trial counsel rendered ineffective assistance to his defense for failure to

object, move for mistrial, move to strike, or otherwise take action to: (1) "bar Dr.

Isidore Mihalakis, the forensic pathologist[3] called by the prosecution, from testifying

that the boots worn by your petitioner, Mr. Reddinger, were the cause of pattern

injuries he observed on David Shutter's head and neck regions" (Doc. 1 at 13); (2)

"challenge the qualifications of Dr. Isidore Mihalakis to offer opinion testimony

suggesting that the pattern injuries he observed on David Shutter's head and neck

regions were caused by the boots worn by your petitioner" (*Id.* at 17); (3) "protect

Carl Reddinger's vital interests against the introduction, through Dr. Isidore

Mihalakis, of inadmissible and highly prejudicial hearsay testimony that improperly

bolstered the prosecution's case" (*Id.* at 20); (4)  bar "trial testimony by

Commonwealth witness Joseph Knier regarding a prior act, in the form of a comment

allegedly made by the petition [sic], offered for the purpose of establishing intent and

conformity with habit" (*Id.* at 25); and (5) "seek supplemental and curative jury

instructions when the trial judge improperly charged the jury regarding the penalties

---

[3] Dr. Mihalakis performed an autopsy on the victim.

for murder but not the other charged offenses" (*Id.* at 29).  He argues that appellate counsel also rendered ineffective assistance because none of these issues were raised on direct appeal.[4]

## II.   Threshold Issues Under 28 U.S.C. § 2254(b)

Before a federal court may reach the merits of an application for a writ of habeas corpus filed on behalf of a person in custody pursuant to the judgment of a state court, it must be shown that the applicant has exhausted the remedies available in state courts, there is no available state corrective process, or there are circumstances that render the state process ineffective.  28 U.S.C. § 2254(b)(1).  The prisoner must have *properly* exhausted those remedies; that is, he must have fairly presented his claims to the state courts.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001).

Fair presentation requires that the "substantial equivalent" of both the legal theory and the facts supporting the federal claim be submitted to the state courts. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992).  The same

---

[4]  It appears that the primary argument of ineffective assistance of counsel is directed towards appellate counsel, but in making this argument Reddinger also alleges that trial counsel was ineffective.  Because the court construes this *pro se* petition liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and because the questions of ineffective assistance of trial and appellate are intertwined, the court will address both.

method of legal analysis applied in federal court must be available to the state courts.
*Id.*; *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  Moreover, to satisfy

exhaustion, the state court must be put on notice that a federal claim is being asserted.

*Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).  The exhaustion requirement is

satisfied if the petitioner's claims are either presented to the state courts directly on

appeal from the judgment of sentence, or through a collateral proceeding, such as a

petition under the PCRA.  *Evans*, 959 F.2d at 1230.  It is not necessary to present

federal claims to state courts both on direct appeal and in a PCRA proceeding.  *Id.*

When a claim has not been fairly presented to the state courts but further

state-court review is clearly foreclosed under state law, exhaustion is excused on the

ground of futility. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Toulson v.*

*Beyer*, 987 F.2d 984, 987-88 (3d Cir.1993).  Such a claim is procedurally defaulted,

not unexhausted, and may be entertained in a federal habeas petition if there is a basis

for excusing the procedural default.  Procedural default may only be excused if a

petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of

justice" would result. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Respondents maintain that Petitioner "has waived (and thus not exhausted) his

claims of ineffectiveness of appellate counsel because he failed to present evidence of

counsel's ineffectiveness at the PCRA hearing."  (Doc. 12 at 4.)  They offer no

authority to support their contention.  In contrast, the record demonstrates that

Reddinger presented his ineffective assistance claims to the state courts in his PCRA

proceedings and appeals.  Further, he presented the substantial equivalent of the

instant federal claims in both his brief in support of his PCRA petition and in his

PCRA appeal to the Superior Court.  (*See* Doc. 1 Ex. A.)  His appellate counsel and

the legal assistant who assisted in his appeal testified at the PCRA hearing.  The

PCRA court did not indicate that his failure to present supporting testimony at the

PCRA hearing was a factor in denying him relief.  Thus, Reddinger fairly presented

the substance of his present federal claims for consideration before the Pennsylvania

state courts as contemplated under *Evans*.  Petitioner is not in procedural default and

this court will turn to the merits of his claim.


**III.**   **Legal Standards for Review of a State Court Decision Under § 2254(d)**

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal

habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  Specifically,

when a federal-law issue has been adjudicated on the merits by a state court, the

federal court reverses only when the decision was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

United States Supreme Court.  28 U.S.C. § 2254(d)(1);[5] *Gattis v. Snyder*, 278 F.3d

222, 228 (3d Cir. 2002); *Moore v. Morton*, 255 F.3d 95, 104-05 (3d Cir. 2001).   The

"contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meaning.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).  As the

Supreme Court explained in *Bell*:

> A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule different
> from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts.  The court may grant relief under the
> "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from our decisions
> but unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable, and . . . an unreasonable application is
> different from an incorrect one.

---

[5] Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; . . . .

*Bell*, 535 U.S. at 694 (citations omitted); *accord Keller*, 251 F.3d at 417-18 (a district court entertaining a § 2254 action must first address whether the state court decision was contrary to Supreme Court precedent); *Martini v. Hendricks*, 188 F. Supp. 2d 505, 510 (D.N.J. 2002) (court must evaluate reasonableness of factual findings in light of evidence presented in the state court proceeding).  Findings of fact by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e)(1).

## IV.   Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test.  The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  *Id.* at 687; *accord Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994).

To demonstrate deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688; *accord Jermyn v. Horn,* 266 F.3d 257, 282 (3d Cir. 2001).  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord*

*Jermyn*, 266 F.3d at 282; *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996).

If, under the circumstances, counsel's actions might be considered sound trial

strategy, the presumption is not rebutted, *Strickland*, 466 U.S. at 689, because

"substantial deference is to be accorded counsel's tactical decisions." *United States*

*v. Wiener*, 127 F. Supp. 2d  645, 648 (M.D. Pa. 2001).  A decision supported by

"reasonable professional judgment" does not constitute ineffective assistance of

counsel.  *See Burger v. Kemp*, 483 U.S. 776, 794 (1987).  It follows that counsel

cannot be deemed ineffective for pursuing a meritless claim.  *Hartey v. Vaughn*, 186

F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694;

*accord Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).  "Without proof of both

deficient performance and prejudice to the defense . . . it could not be said that the

sentence or conviction resulted from a breakdown in the adversary process that

rendered the result of the proceeding unreliable, and the sentence or conviction

should stand." *Bell*, 535 U.S. at 695 (internal quotations and citation omitted).  In

assessing whether the result of the proceeding might have been different, a reviewing court must consider "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695; *Jermyn*, 266 F.3d at 283.

At the time the state courts reviewed the claims, *Strickland*'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the *Strickland* test. *See, e.g., Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). The Third Circuit Court has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*. *Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005); *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Thus, under § 2254(d)(1), the relevant inquiry in assessing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania Supreme Court's decision involved an unreasonable application of *Strickland*. *Jacobs*, 395 F.3d at 107 n.9; *Werts*, 228 F.3d at 204.

### A.     Dr. Mihalakis' Testimony

Three (3) of the Reddinger's present claims center around expert testimony given at trial by Doctor Isidore Mihalakis, a forensic pathologist who testified that the victim died of trauma. Mihalakis indicated that the majority of the trauma was

inflicted by Reddinger on the basis that boots worn by Reddinger were consistent with injury patterns on the victim's head and neck.[6]   Reddinger claims that trial counsel erred by not objecting to that portion of the testimony.   Specifically, he contends that Dr. Mihalakis was not qualified to offer expert testimony as to the issue of whose footwear was responsible for the injury patterns which appeared on the victim's head and neck.[7]   Reddinger adds that the doctor "all but admitted that his opinion testimony suggesting that Mr. Reddinger's boots were responsible for the pattern injuries was not supported by any meaningful degree of specialized education, training, or experience regarding boot configurations and injury patterns." (Doc. 1 at 15.)   According to Reddinger, this highly prejudicial opinion testimony was not given with a reasonable degree of medical certainty.

In a related argument, Reddinger argues that Dr. Mihalakis gave "blatant hearsay testimony" without objection as to the meaning of the expression "reasonable degree of medical certainty." (Doc. 1 at 23-24.)   When the prosecution asked what he meant by that phrase, Dr. Mihalakis testified that "[r]easonable medical certainty is

---

[6] While Reddinger admitted that he was involved in the altercation, his trial defense was that it was co-defendant Barto who was responsible for inflicting the more serious injuries which led to the victim's death.

[7] Reddinger acknowledges that Dr. Mihalakis "was qualified to testify about the injuries sustained by Mr. Shutter and to render an opinion that they resulted in the man's death." (Doc. 1 at 18.)

11

that if another person who is also a forensic pathologist is posed with the same set of

findings, he would reach the same conclusion or if a group of forensic pathologists

were posed with the same findings they will also reach the same conclusion." (Doc.

14 Ex. 2, Trial Tr. 283.)  According to Reddinger, the legal issue of what constitutes

reasonable medical certainty was outside the scope of Dr. Mihalakis's expertise.

Further, Reddinger claims that Dr. Mihalakis improperly bolstered his own testimony

by claiming that his colleagues (unidentified and not present to testify) would come to

the same conclusions that Dr. Mihalakis did.  Reddinger argues that trial counsel was

ineffective for failing to object to this testimony, and appellate counsel was

ineffective for failing to raise the issue on appeal.

The PCRA court reviewed Dr. Mihalakis' testimony and Reddinger's

arguments set forth above.  Dr. Mihalakis was qualified by the trial court to present

opinion testimony in the area of forensic pathology and to opine on the cause of the

victim's death. (Doc. 14 Ex. 17, *Commonwealth v. Reddinger*, No. 1998-10045

["PCRA Op."] at 16 (Pa. Comm. Pls. Apr. 22, 2002).)  He testified that it was

possible that a pair of brown suede work boots attributed to Reddinger was consistent

with the pattern injuries found on Shutter and that it was possible that they were

directly responsible for the victim's parallel injuries. *Id.* at 13.  His opinion about the

pattern was based on his comparison of the shoes worn by each defendant the night of

the attack.  *Id.*  Reddinger's were the most consistent with the resulting injuries on the

victim's body.  *Id.*  The PCRA court concluded that this opinion was well within Dr.

Mihalakis' qualifications and that an objection thereto by trial counsel would have

been meritless.  *Id.* at 16.  Additionally, although a formal objection was not made,

Reddinger's trial counsel "did fiercely attack" the testimony regarding the boots on

cross-examination.  *Id*. at 19.  The PCRA court found that trial counsel had not

rendered ineffective assistance as to Dr. Mihalakis' testimony.  Moreover, Reddinger

failed to demonstrate the reasonable probability that but for counsel's failure to object

to the testimony, the outcome would have been different in light of the testimony by

Reddinger's co-defendant about Reddinger's actions during the attack.  *Id.* at 19.

This court agrees with the PCRA court's conclusions regarding the

effectiveness of trial counsel.  Trial counsel provided Reddinger sound representation

during Dr. Mihalakis' testimony.  The PCRA court's application of clearly

established federal law on this matter was not objectively unreasonable.  Further,

because trial counsel was not ineffective, appellate counsel may not be held

ineffective for having failed to raise a meritless ineffectiveness issue on appeal.

*Holland v. Horn*, 150 F. Supp. 2d 706, 731 (E.D. Pa. 2001).

### B.      Knier's Testimony

Joseph Knier testified at trial that in November 1997, he and Reddinger

attended a party.  During the party, Knier heard Reddinger say that "when he gets into

a fight, he's going to make sure the guy does not get up and walk away."  *Id*. at 21.

According to Reddinger, this statement was inadmissible evidence of his

character or habit during a fight.  (Doc. 1 at 27.)  At most, the statement went to

Reddinger's general intent, not to his specific intent or state of mind during the

attack.  (*Id.*)  Further, the comment was not made contemporaneously with the

altercation.  (*Id.* at 28.)  Because the defense strategy was to mitigate Reddinger's

degree of culpability, trial counsel was ineffective for failure to object to the

admission of Knier's statement and appellate counsel was ineffective for failing to

raise the issue on appeal.

Respondents counter that the trial court's admission of Knier's testimony "was

probative to show intent to kill;" that the victim's death was not caused by accident or

manslaughter.  (Doc. 12 at 11.)  Moreover, even if admission of the testimony was

improper, it was harmless error in light of the overwhelming evidence of guilt.  (*Id.*)

Thus, neither trial counsel nor appellate counsel was ineffective.

The PCRA court did not address whether trial counsel's failure to object fell

below an objective standard of reasonableness.  It indicated that the challenged

testimony "was relevant to the mindset of Defendant during the months leading up to the incident with [the victim] and was probative of Defendant's behavior in late 1997" and therefore admissible.  PCRA Op. at 21.  The PCRA court concluded that even if the statement was arguably inadmissible, the resulting prejudice to Reddinger was *de minimis* in light of the overwhelming admissible evidence of his guilt presented at trial.  *Id.*

This court concludes that the PCRA court's evaluation of the prejudice prong of the *Strickland* test was not an unreasonable application of federal law. Reddinger's arguments regarding counsel's failure to object to Knier's testimony do not create a reasonable probability that the result of the proceeding would have been different in light of the other evidence of Reddinger's guilt.  Trial counsel's failure to object to Knier's testimony does not undermine confidence in the outcome of Reddinger's trial.  Because trial counsel was not ineffective on this question, appellate counsel was not ineffective for failing to raise the issue of trial counsel's ineffectiveness on appeal.  *Holland*, 150 F. Supp. 2d at 731.

### C.   Jury Instructions

Reddinger's final contention is that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failure to object to an improper jury charge, or to seek curative jury instructions.  Reddinger claims that the jury instructions were

"confusing and improperly interjected sentencing considerations into the jury's

deliberative process on guilt or innocence." (Doc. 1 at 30.) Specifically, Reddinger

claims that counsel was ineffective for failing to challenge the charge because the

trial judge instructed the jury on the penalties for murder in the first and third degree,

but did not instruct the jury on penalties for the other, lesser offenses of which he was

accused. (*Id.*)

The PCRA judge was the same judge who presided at Reddinger's trial on the

merits. Although there was no testimony at the PCRA hearing regarding trial

counsel's decision not to object to the jury instructions, the judge recalled that they

were the topic of discussion off the record in chambers. PCRA Op. at 25. Counsel

were provided typed jury instructions for review before closing arguments, and were

given the opportunity to discuss them in chambers. Reddinger's trial counsel

requested that the instructions include the sentencing ranges for first and third degree

murder. *Id.* at 24-25. He was "truly concerned with differentiating the penalties for

first degree murder and third degree murder." *Id.* at 26. The purpose for his request

"was to differentiate between life imprisonment for first degree murder and the newly

established sentencing range for third degree murder. . . . [I]t was [his] intent to make

third degree murder seem more palatable to the jury by making the jury aware that the

possible sentencing range was from twenty (20) to forty (40) years incarceration." *Id.*

at 26.  The PCRA court thus found it reasonable that trial counsel's "strategy for his

young client was correct, in that the jury was indeed deliberating between first degree

murder and third degree murder." *Id.* at 28.  Trial counsel was reasonable in seeking

to "make third degree murder more palatable to the jury" than first degree murder.  *Id.*

at 28.  Because that was a reasonable tactical decision by Reddinger's trial counsel,

there was no basis for a finding of ineffective assistance.

This court concludes that this analysis is not an unreasonable application of

federal law.  The tactical decision by trial counsel was reasonable under the first

prong of the *Strickland* test.  Moreover, Reddinger has not made a sufficient showing

that the outcome of the proceedings would have been different but for the inclusion of

the challenged instructions.  Because trial counsel was not ineffective to Reddinger

on the issue of jury instructions, appellate counsel was not ineffective in having

declined to raise the issue on appeal.  *Holland*, 150 F. Supp. 2d at 731.

## V.   <u>Conclusion</u>

Because the PCRA court reasonably applied the *Strickland* test to determine

whether Reddinger's trial counsel and appellate counsel were constitutionally

ineffective, this court will not upset its conclusions.  The instant petition for habeas

corpus under 28 U.S.C. § 2254 will be denied.


                                s/Sylvia H. Rambo
                                SYLVIA H. RAMBO
                                United States District Judge


Dated:  December 4, 2007.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL REDDINGER, III,** | : | **CIVIL NO. 1:CV-04-1030** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN PALAKOVICH,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

## <u>ORDER</u>

In accordance with the accompanying memorandum of law, **IT IS HEREBY**

**ORDERED THAT:**

1.  Petitioner Carl Reddinger, III's petition for writ of habeas corpus is

**DENIED**.

2.  The Clerk of court shall close the case.

3.  Based on the court's determination, there is no basis for the issuance of a

certificate of appealability.

                 s/Sylvia H. Rambo
                SYLVIA H. RAMBO
                United States District Judge

Dated:  December 4, 2007.